IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMIE LOVELADY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 4065 |
| | ) | |
| v. | ) | Hon. Virginia M. Kendall |
| | ) | |
| LYRIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jimmie Lovelady sued Defendant Lyris, Inc. for alleged violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq* ("Wage Act") and breach of contract based on the amount of severance pay he received when he left Lyris's employment. Lyris moves to compel arbitration of the two claims asserted against it pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. In the alternative, Lyris moves to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants Lyris's motion to dismiss with respect to Count I of Lovelady's complaint and its motion to compel arbitration with respect to Count II and dismisses the case.

## BACKGROUND

The following facts are taken from the complaint or documents referenced in the complaint and are assumed to be true for purposes of this Motion. *See Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 520 (7th Cir. 2003); *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Lyris recruited Lovelady to be its Vice President of Sales beginning in September 2010. (Complaint at ¶10.) The parties negotiated the terms of Lovelady's employment during the course of the following month and signed an employment agreement on October 7, 2010

("Employment Agreement"). (*Id.* at Ex. B.) The Employment Agreement promised that, among other things, Lyris would pay Lovelady six months severance if Lovelady was terminated without cause after six months of employment. (*Id.* at ¶17 and Ex. B.) The six months severance pay was to be calculated based on Lovelady's total compensation other than employee benefits. (*Id.* at ¶18.) The Lyris Senior Sales Management Compensation Plan (the "Plan") defines the terms "Base Salary," "Bonus," and "Compensation."[1] (Defendant's Memorandum in Support of its Motion to Compel Arbitration at Ex. 2.) Exhibit A to the Plan sets forth the method for calculating Lovelady's commissions and bonuses. (*Id.* at Ex. 2.) The Plan also includes a binding arbitration clause as part of its dispute resolution procedure for "[a]ny disputes under the Plan." Lovelady signed the Plan on June 9, 2011. (*Id.*)

Lovelady's employment with Lyris ended as of September 30, 2011. (*Id.* at Ex. 3.) On October 12, 2011, Lovelady signed a letter purporting to memorialize an oral agreement in which he accepted three months base severance pay ("Severance Agreement").[2] (*Id.*) Lovelady subsequently received three months of base pay as severance and now alleges that he is entitled to six months of severance pay pursuant to the employment agreement he signed in October 2010. (Complaint at ¶41.)

Lovelady's attorney sent a formal demand letter to Lyris on February 10, 2012 in which he used the Plan to calculate the amount Lovelady was allegedly owed. (*Id.* at Ex. G.) Lyris

---

[1] At the 12(b)(6) stage, the Court would typically be confined to Lovelady's complaint, which contained only the Employment Agreement. But Rule 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir.1994)). Here, Lovelady refers to both the Plan and Severance Agreement (discussed below) on page 3 of Exhibit G of his complaint, and Lyris attached them to its motion. Both documents are central to his claims and there is no dispute as to their authenticity. The Court may therefore look at these documents without converting the motion to dismiss into a motion for summary judgment.

[2] The Court makes no ruling as to whether this letter represents a binding agreement. This is a question of fact that may be addressed in arbitration if the parties so choose.

disagreed and did not provide any more severance pay to Lovelady beyond what it had already given him. Lovelady later filed a claim for unpaid compensation with the Illinois Department of Labor ("DOL") under the Wage Act. The DOL dismissed Lovelady's claim on September 24, 2012 and held that it was "subject to mandatory, binding arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. Sections 1 *et seq*." (Defendant's Memorandum in Support of its Motion to Compel Arbitration at Ex. 4.) Lovelady then filed the instant action in the Circuit Court of Cook County, Illinois alleging the same Wage Act claims and a breach of contract claim. Lyris removed the action to this Court on May 31, 2013 on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. Lyris now moves this Court to compel Lovelady to arbitrate his dispute under the FAA.

## DISCUSSION

### I. Lyris's Motion to Compel Arbitration or Dismiss Lovelady's Breach of Contract Claims

The primary issue for the Court to resolve is whether the parties are bound to arbitrate this dispute under the terms of the arbitration clause contained in the Plan. Lovelady argues the Plan does not cover the present dispute because his claims arise from a wholly separate document. Lyris counters that the Plan governs Lovelady's employment generally—and compensation specifically—and therefore applies to this and all related disputes.

Lovelady signed the Plan on June 9, 2011. (Memorandum in Support of Defendant's Motion to Compel Arbitration, Ex. 2.) Although he frequently refers to the Plan as a "commission plan," its accurate title is, "Lyris Senior Sales Management *Compensation* Plan." (*Id.* (emphasis added).) The Plan's arbitration clause states, in pertinent part, "Any disputes under the Plan that cannot be resolved by mutual agreement after exhausting the Dispute Resolution Process outlined above shall be submitted to binding arbitration in Alameda County,

under the rules of the American Arbitration Association." (*Id.*) The Plan also defines key words and phrases meant to clarify Lovelady's compensation as a Lyris employee, including "Base Salary," "Bonus," "Client," "Commission," "Compensation." (*Id.*) In Section 5(b), the Plan provides that "The Employee's signature on [the Plan] is an acknowledgement by the Employee that he/she has received and agrees to all the provisions and documents of the Plan. Compensation is not considered earned and due to the Employee until the Employee has signed and returned [it]." (*Id.*)

The FAA embodies a federal policy broadly favoring arbitration and states, "an agreement in writing to submit to arbitration . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006); *see also Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26 (1987) (the FAA "establishes a federal policy favoring arbitration [and] requiring that we rigorously enforce agreements to arbitrate") (internal quotations omitted). Congress designed the FAA to govern the "enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal court." *Jain v. De Mere,* 51 F.3d 686, 688 (7th Cir. 1995). The FAA requires courts to stay or dismiss proceedings and to compel arbitration if an issue in controversy is covered by a valid arbitration agreement. 9 U.S.C. §§3, 4; *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1748 (2011).

Whether the parties agreed to arbitrate a particular issue usually is a question for the court and not the arbitrator to decide. *See AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649–50 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). When petitioning to compel arbitration pursuant to the FAA, the moving

party must demonstrate: (1) the existence of a written agreement to arbitrate; (2) that the dispute is within the scope of the arbitration agreement; and (3) that there is a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 687 (7th Cir. 2005). Here, Lovelady does not dispute that he entered into the Plan with Lyris and that the Plan contains an explicit arbitration provision. He also concedes that he refuses to arbitrate his dispute. Therefore, the only issue for the Court to resolve with respect to this motion is whether the dispute between Lovelady and Lyris is covered by the Plan.

In determining "whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *see also Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1031 (7th Cir. 2012) ("To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation.") (internal citations omitted); *Reliance Ins. Co. v. Raybestos Prods. Co.,* 382 F.3d 676, 678–79 (7th Cir. 2004). Section 11 of the Plan states: "This Plan shall be governed, construed and enforced in accordance with the laws of the State of California and of the United States of America, without reference to conflict of laws principles." California contract law thus governs whether the dispute falls within the scope of the Plan.

Under California law, "The fundamental canon of construction which is applicable to contracts generally is the ascertainment of the intention of the parties . . . and the language of the agreement, if clear and explicit and not conducive to an absurd result, must govern its interpretation." *Universal Sales Corp. v. Cal. Press Mfg. Co.*, 128 P.2d 665, 671 (Cal. 1942). California resolves doubts as to whether the arbitration provision applies in favor of arbitration. *United Transp. Union v. S. Cal. Rapid Transit Dist.*, 9 Cal. Rptr. 2d 702, 703–04 (Ct. App.

5

1992).  In addition, "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."  Cal. Civ. Code § 1642.  Whether Section 1642 applies in a particular case is a question of fact for resolution by the trial court.  *Brookwood v. Bank of Am.*, 53 Cal. Rptr. 2d 515, 520 (Ct. App. 1996).  However, Section 1642 is only applicable if "there is ambiguity concerning the interpretation of a contract."  *Sonoma Falls Developers, LLC v. Nev. Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 924 (N.D. Cal. 2003) (quoting Cal. Civ. Code § 1637).

In *Brookwood*, plaintiff was an investment specialist for defendants Bank of America and BA Investment Services ("BAIS").  53 Cal. Rptr. 2d at 518.  When she was hired, she signed three agreements: (1) a registered representative agreement with BAIS containing an arbitration provision covering "any dispute, controversy or claim relating to this Agreement, or its breach;" (2) a Uniform Application for Securities Industry Registration or Transfer ("U-4 form") with BAIS that included an arbitration provision stating, "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated;" and (3) an employment agreement with Bank of America for salaried employees.  *Id.*  Plaintiff later sued Bank of America and BAIS for wrongful termination based on sex discrimination, who in turn moved to compel arbitration.  *Id.* at 517.  In holding that the arbitration provision applied to the plaintiff's wrongful termination claim, the court stated, "Bank and BAIS are related companies that hired plaintiff at the same time in a dual capacity with principal responsibilities that required a securities registration."  *Id.* at 521.

Like the plaintiff in *Brookwood*, the Employment Agreement, Plan, and Severance Agreement were all essential components of Lovelady's employment relationship with Lyris.  And although these documents were not executed at the same time, contemporaneous execution

6

is not required under California law. *Versaci v. Superior Court*, 26 Cal. Rptr. 3d 92, 98 (Ct. App. 2005) ("[Section 1642] is most frequently applie[s] to writings executed contemporaneously, but it is likewise applicable to agreements executed by the parties at different times if the later document is in fact a part of the same transaction." (quoting *Body-Steffner Co. v. Flotill Prods.*, 147 P.2d 84, 87 (Cal. Dist. Ct. App. 1944)). It is clear that the Plan and Severance Agreement executed after the Employment Agreement were part of Lovelady's employment transaction. So inextricably linked are these documents that Lovelady cannot even calculate his alleged damages under the Employment Agreement without reference to the Plan: He alleges he is owed $103,750 in his complaint, (Complaint at ¶¶53(a) and 62(a)), a figure described as "sub-total unpaid portion of 6 months severance" that includes "6 months commission (based on $95,000 annual plan)." (Complaint at Ex. G.) This value was "calculated on [the] Total Contract Value" contained in the "*commission plan* Lyris and [Lovelady] signed." (*Id.* (emphasis added).) And just as the arbitration clauses in *Brookwood*, the Plan's clause applies to "any dispute[]" arising under it. Because the Employment Agreement, Plan, and Severance Agreement must be read together and the Plan contains an arbitration provision applicable to "any dispute," the Court finds that the parties are bound to arbitrate this dispute.

In the alternative, Lovelady argues that the Plan's arbitration clause is illusory and therefore unenforceable. He bases this argument on Section 9(a) of the Plan that reserves Lyris "the right to modify [the Plan] at any time." However, California courts have rejected similar arguments by reading a duty to exercise that right to modify "fairly and in good faith." *24 Hour Fitness, Inc. v. Superior Court*, 78 Cal. Rptr. 2d 533, 542 (Ct. App. 1998). In *24 Hour Fitness*, plaintiff sued her former employer, 24 Hour Fitness, for sexual harassment. *Id.* at 535. 24 Hour Fitness moved for summary judgment on the grounds that plaintiff's employment agreement

7

contained a binding arbitration clause. *Id.* Among plaintiff's counterarguments was that the arbitration clause was not binding because only the plaintiff, and not 24 Hour Fitness, was subject to the clause, rendering it illusory. *Id.* The clause stated,

> Finally, I acknowledge that Nautilus [24 Hour Fitness's former name] reserves the right to change any provision in this Handbook at any time for any reason without advance notice. Though Nautilus can make changes, I understand that nothing in this Handbook can be modified or deleted, nor anything added, in any way by oral statement or practice. Only the President of Nautilus can change this Handbook and the change must be in writing. If Nautilus makes any material changes, it will give me a copy of them.

*Id.* at 541. In denying 24 Hour Fitness's motion, the court held that the arbitration clause was enforceable and not illusory because the reservation of power was "subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings." *Id.* Here, the Plan's modification language carries the same implied limitation of the duty to exercise good faith and fair dealings:

> No notice, writing, decision or other modification of the Plan shall be binding upon the Company unless set forth in a written amendment to the Plan executed by an authorized representative of the Company. Any and all amendments to the Plan are subject to the approval of the Lyris Compensation Committee. . . . The Company reserves the right to modify the Lyris Senior Sales Management Compensation Plan and/or the Lyris Individual Compensation Plan and Payment Policy at any time. . . . [C]hanges to an individual's Lyris Senior Sales Management Compensation Plan (excluding Named Account content) require the approval of the CFO and CEO.

The Court therefore finds the Plan's arbitration clause is enforceable and not illusory. And because the amount Lovelady alleges he should have received as severance from Lyris falls "under the Plan" and Lovelady agreed to be bound by its terms, the Court grants Lyris's motion

to compel arbitration and dismisses Lovelady's breach of contract claim in Count II with prejudice.

## II. Lyris's Motion to Compel Arbitration or Dismiss Lovelady's Illinois Wage Act Claims

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 679. When there are well-pleaded factual allegations, the Court assumes their veracity then determines if they plausibly give rise to an entitlement to relief. *Id.*

Lovelady alleges that Lyris violated Section 115/9 of the Wage Act when it failed to pay him severance pursuant to the Employment Agreement. In pertinent part, Section 115/9 states:

> In case of a dispute over wages, the employer shall pay, without condition and within the time set by this Act, all wages or parts thereof, conceded by him to be due, leaving to the employee all remedies to which he may otherwise be entitled as to any balance claimed. The acceptance by an employee of a disputed paycheck shall not constitute a release as to the balance of his claim and any release or restrictive endorsement required by an employer as a condition to payment shall be a violation of this Act and shall be void.

820 ILCS 115/9. Lyris counters with an argument that the Wage Act does not apply to the present dispute because Lyris is not an Illinois employer. It cites Section 115/1, which states that the Wage Act applies to "all employers and employees *in this State*." (emphasis added).

Illinois courts have interpreted this to mean the Wage Act applies "only to Illinois employees and Illinois employers." *Liaquat Khan v. Van Remmen, Inc.*, 756 N.E.2d 902, 913 (Ill. App. Ct. 2001) (cited approvingly by *McGreal v. Semke*, 836 F. Supp. 2d 735, 740 (N.D. Ill. 2011)). In *Khan*, the plaintiff sued his former employer, a labor placement agency, for unpaid wages and overtime. *Khan*, 756 N.E.2d at 906. Specifically, plaintiff alleged that an agreement and subsequent letter between him and the defendants stipulated his pay, and that defendant failed to compensate him as promised. *Id.* The defendants moved to quash alleging that Illinois courts had no personal jurisdiction over them. *Id.* Among plaintiff's jurisdictional arguments was that the defendants committed the "statutory tort of violating the Wage Act." *Id.* at 912. The court held that the plaintiffs did not allege sufficient facts to prove the Wage Act should apply because: (1) defendant was a Delaware corporation with its headquarters in Wisconsin; (2) it only placed four people in Illinois over the course of five years; and (3) had no office, telephone number, or advertisements in Illinois. *Id.* at 906, 912–13.

In *McGreal*, the plaintiff was terminated from his employment with defendants and alleged that he was entitled to vacation and revenue sharing payments under his employment contract. 836 F. Supp. 2d at 737. Among other things, plaintiff argued that defendants violated the Wage Act. *Id.* Defendants argued that the Wage Act did not apply to them because it was a Missouri corporation with its principal place of business in Missouri. *Id.* 740. The court disagreed and held that the Wage Act applied to defendants as Illinois employers because they

maintained an office, marketed their services, and conducted "substantial business" in Illinois. *Id.* at 741.

In this case, the only fact Lovelady alleges that ties Lyris to Illinois is that it allowed him to conduct his work from his home office in Chicago. (Complaint at Ex. B.) At the same time, he alleges that Lyris is a Delaware corporation with a contact address in Emeryville, California. (Complaint at ¶ 3 and Ex. B). But he does not allege that Lyris had an office in Illinois (besides his own home), had any other employees in Illinois, advertised in Illinois, or had any other contacts with the state such that its laws should apply. Tellingly, Lovelady does not include any additional facts that tie Lyris to Illinois in his Response to Lyris's Motion to Compel Arbitration. Nor does Lovelady suggest that Lyris's decision to hire him had anything to do with its desire to engage in business or have any presence in Illinois. To the contrary, the initial communication from Lyris's President & CEO to Lovelady asked if Lovelady had any interest in the job, or if not, whether Lovelady "[knew] anyone in the Bay area [San Francisco, California] who would be." (Complaint at Ex. A.) Because the facts Lovelady affirmatively alleges do not sufficiently tie Lyris to Illinois under the Wage Act, Lyris's motion to dismiss Lovelady's claims under the Wage Act in Count I of his complaint is granted.

## CONCLUSION

For the reasons set forth above the Court grants Lyris's motion to dismiss with respect to Count I of Lovelady's complaint and its motion to compel arbitration with respect to Count II. The case is dismissed with prejudice.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 7, 2013